**PAUL E. POTTER   SBN 93002**
POTTER, COHEN & SAMULON
3852 East Colorado Boulevard
Pasadena, California  91107
(626) 795-0681 Tel
(626) 795-0725 Fax
ppotter@pottercohenlaw.com

Attorney for Defendant
**JOSE LUIS PAYAN**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**JOSE LUIS PAYAN,**<br><br>Defendant. | **CASE NO.: CR12-919-GW**<br><br>**DEFENDANT JOSE LUIS PAYAN'S POSITION WITH RESPECT TO SENTENCING**<br><br>DATE:  November 25, 2013<br>TIME:   8:00 a.m.<br>JUDGE: HONORABLE GEORGE H. WU |

TO THE HONORABLE GEORGE H. WU, UNITED STATES DISTRICT JUDGE AND TO RASHA GERGES, ASSISTANT UNITED STATES ATTORNEY:

Defendant JOSE LUIS PAYAN by his attorney, Paul E. Potter, presents the following with respect to the sentencing in this case.

Dated: October 28, 2013                             Respectfully submitted,

                                                          /s/ Paul E. Potter
                                                          PAUL E. POTTER
                                                          Attorney for Defendant
                                                          **JOSE LUIS PAYAN**

# SENTENCING MEMORANDUM

## I.

## INTRODUCTION

Once the Government files its anticipated motion under USSG §5C1.2(a) and 18 USC 3553(e), the statutory mandatory minimum sentence will no longer apply. The question before the Court will then become what sentence will satisfy the requirements of all of the 18 USC §3553 factors. He asks, the Court to impose no more than 24 months, which for the reasons more fully explained below takes into account all of the different considerations this case presents.

The advisory Sentencing Guidelines alone do not provide an adequate basis to arrive at a Sentence, which satisfies all of the 18 USC §3553 factors, even at the low end of a resulting USSG §5C1.2(a) Plea Agreement Guideline Sentence, which would be 46 months.

MR. PAYAN recognizes that the court is required to consider the Guidelines and policy statements issued by the United States Sentencing Commission; however, he asks the Court to use <u>Nelson v. United States</u>, *infra* as its point of departure for sentencing.

Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable. In Rita we said as much, in fairly explicit terms: "We repeat that the presumption before us is an appellate court presumption. [T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." 551 U.S., at 351, 127 S. Ct. 2456, 168 L. Ed. 2d 203. And in Gall v. United States, 552 U.S. 38, 128 S. Ct.

586, 169 L. Ed. 2d 445 (2007), we reiterated that district judges, in considering how the various statutory sentencing factors apply to an individual defendant, "may not presume that the Guidelines range is reasonable." Id., at 50, 128 S. Ct. 586,169 LEd.2d 445. Nelson v. United States 555 U.S. 350 (U.S. 2009)

## II.
## SUMMARY OF THE <u>FACTORS</u> THAT SHOULD BE CONSIDERED IN SENTENCING MR. PAYAN

The Supreme Court decision in Nelson is clear, concise and unequivocal, An extended discussion of United States v. Booker, 543 U.S. 220 (2005), wherein the United States Supreme Court rendered the federal sentencing guidelines advisory, and its 9th Circuit progeny is no longer necessary. 18 U.S.C. Section 3553(a) requires a sentencing court to impose a sentence "sufficient, but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. To afford adequate deterrence to criminal conduct. To protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs the sentencing judge to consider the nature and circumstances of the offense and the history and characteristics of the defendant and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate

///

deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [. . .] any pertinent policy statement [...]

Further the Statute says that a Judge must be guided by the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.   18 U.S.C. Section 3553(a).

## THE GUIDELINES

Despite that fact that, as stated in Justice Scalia's dissenting opinion in Booker, Section 3553 "provides no order of priority among all those factors." Booker, *supra* at 304-305, the United States Sentencing Guidelines remain the first step in sentencing analysis

In Mr. PAYAN'S case, the United States Probation Office ("USPO") calculated a total offense level of 34, a Criminal History Category of I, 31 after a three level reduction for acceptance resulting advisory Guidelines range of 108-135. Without the benefit of USSG §5C1.2(a) the statutory minimum would be 120 months.

The Plea Bargain describes the contraband as a "substance containing" and so the Offense level is 28, which goes down to 25 after a three level reduction for acceptance resulting advisory Guidelines range of 55-71 months imprisonment. Again,

this is without the benefit of USSG §5C1.2(a) and so the statutory minimum remains 120 months.

If we apply the earned benefit of a further two level reduction under USSG §5C1.2(a) to the bargained for offense level, both of which we assume the Government will support, we arrive at Level 23, with no Criminal History, 46 to 51 months. However; this is not the end of the inquiry, but only its beginning.

We proceed to, or perhaps we return to 18 USC §3553.

## SUFFICIENT, BUT NOT GREATER THAN NECESSARY

This is very subjective. How much punishment is enough?

It seems reasonable to suppose that there is no need to smite a first offender with all our might. MR. PAYAN appears to have understood the lesson.

The Probation Officer notes in her letter to the Court that the parties entered into the plea agreement anticipating a base offense level of 28, presumably based on Payan possessing 221.3 grams of a mixture or substance containing methamphetamine as opposed to Ice or actual methamphetamine. Given the mitigating factors referenced above, and provided PAYAN qualifies for the safety valve, the Probation Officer believes a downward variance to give PAYAN the benefit of his plea agreement could be appropriate.

## TO AVOID UNWARRANTED SENTENCE DISPARITIES AMONG DEFENDANTS WITH SIMILAR RECORDS WHO HAVE BEEN FOUND GUILTY OF SIMILAR CONDUCT

This requires us to recognize the "one size fits all" fallacy, which lay beneath the failed Mandatory Sentencing Guideline experiment and to the unequivocal Supreme

Court ruling in Nelson, *supra*.. One size doesn't fit all, and never can. This doesn't mean that disparities cannot be addressed and many can be avoided. It does, however, require us to be aware of how we draw the classes and sets that are to be used to categorize individuals and within which these disparities must be addressed.

## HISTORY and CARACTERISTICS

From the Probation Officers Recommendation:

The instant offense seems out of character for PAYAN. He had a happy childhood and was not subject to any abuse. His parents earned sufficient income to provide basic necessities. PAYAN was particularly close to his father and emulated him by getting involved in baseball at an early age. PAYAN excelled in the sport and by the time he was in high school he was scouted by some major league teams. However, a career in professional baseball did not pan out, possibly due to an injury he received while playing, and PAYAN eventually left high school without graduating to start working.

For the most part, PAYAN has consistently worked since he was a teenager. He started working prior to leaving school and took jobs with the City of Riverside and later the City of Corona removing graffiti. PAYAN was laid off in 2008 and remain unemployed until July 2011, when he obtained his current job at Service Pro. By all accounts, PAYAN has done well at his current job. He was initially hired as a temporary employee but was kept on because of his hard work ethic and good attitude. He was once named employee of the month. PAYAN also submitted numerous customer evaluations praising his work.

PAYAN seems to have exceptionally strong family and community ties. He has four older siblings and 16 nephews and nieces, many of whom submitted letters on his behalf. He also seems very close to his girlfriend's family, many of whom also submitted letters to the Probation Officer. Many of these letters expressed surprise at his conduct and attributed his involvement in the instant offense as the result of hanging out with the wrong crowd. They also noted that PAYAN seems to have turned his life around by finding a good job and becoming involved with his girlfriend, Britney Puorro.

PAYAN did not discuss the instant offense or substance abuse issues during his presentence interview and the Probation Officer can only speculate as to what drove him to engage in the instant matter. However, it is noted that the instant offense occurred while PAYAN was unemployed. Whatever the motivation for his conduct in the instant offense, it does appear that PAYAN has made significant steps to turn his life around and rehabilitate himself into a productive member of the community.

From the attached exhibits:

The business we are in is fire and water damage we take care of emergencies in residential and commercial property's 24hr a day the job is very demanding. Jose is my most important employee he has the highest customer service reviews, letters from customers, he never misses work, he is never late, he is honest, he has taken what I have taught him from over 25 years experience and now leads most of our jobs learning every day a career that he can use when one day he gets married and raises a family. The reason I bring that up he is dating my oldest daughter for over a year now. So I'm not only his employer but the dad to one of my most treasured things in life. Like I said I have gotten to

know Jose I trust him with my daughter's life he is respectful, honest and very giving I do not know of anyone who dislikes him. His parents raised him well. I would be honored if he married my daughter even with the mistakes he has made in his young life. . . (letter from father-in-law/employer)

My Name is Guadalupe Payan I am Jose's Mother. I am writing this letter begging you to consider my youngest sons case Jose Luis Payan Jr.
Jose is the youngest of my five children he lives with my husband and I. Jose helps me pay bills and rent every month and has been for years. My husband is weakening with age and is unable to work. Jose is an excellent son who takes care of and protects my husband and myself. This is why I earnestly ask you to take into consideration my letter without the help of Jose I don't know how my husband and I can come out ahead. Jose is behaving with the best manners he is a great son. and a wonderful human being. Jose committed an error but thank the lord he is correcting his errors, because of this I beg you to please give my son another opportunity to move forward with the help of his family and the grace of God. (from his mother)

    I am most pleased to write a character reference for Jose Payan Jr., my brother.
He is my youngest brother from five of us. I was thirteen when he was born and I felt that I had an obligation as a big sister to make sure he was always doing good and taken care of. My sister Lupe and I always wanted to carry him with us

wherever we went He was our pride and joy as our baby brother. I have enjoyed watching Jose grow and mature into the caring and loving young man he is today. He grew up involved in every sport you can think of: Basketball, Soccer, Football, but the one sport he always enjoyed the most was Baseball. As he entered into High School, he became a very much loved baseball player for Moreno Valley High School and was extremely great at it All the coaches had wonderful things to say about him. I have enclosed some newspaper clipping showing some highlight moments from his High School years. Jose has played a very large role in my life and my children's lives and continues to play that role.

As a strong, determined, and caring uncle for my children, he has helped for many years in taking them to their sports practices. He has always been at their games to cheer for them. He makes it to their award ceremonies to congratulate them and make them feel special and accomplished. My husband and I chose Jose as the Godfather of our twin sons when we baptized them. As a devoted catholic, my husband and I take that decision very serious and we would not have asked him if we did not feel he was more than capable to be there for his godchildren. Jose has always displayed a high degree of integrity, responsibility, and ambition which is why I chose him in the first place.

Jose is surrounded by a large family support system that reside in Moreno Valley, Riverside County, we are all by his side to help him overcome this difficult time of his life as he has done for us, and will make sure he follows the right path and sticks to his plans now more than ever. He has great love for his family and friends and always lends a helping hand when needed. I feel that this is the time

he needs us the most to be there for him. And I know that as a tight-knit family that we are, we will gladly provide any and all the support that he requires. (from his brother)

## CONCLUSION

Most lawyers now practicing were not doing so before the Sentencing Reform Act of 1984. MR. PAYAN's lawyer was. If Counsel may briefly abuse the privilege of the old and reminisce a little; once upon a time the mistakes that young people make were considered part of growing up. An opportunity for self correction was seen as far more socially productive than a mandatory sentencing scheme and a mandatory sentencing guideline scheme, which effectively denies an opportunity to those who could learn from their missteps to do so. Counsel reads <u>Nelson</u> as a broad invitation/command to all of us, to step out from under the shadow of the myth of "one size fits all" to recognize those offenders who can self correct and to make sure that they have an opportunity to learn and to grow.

MR. PAYAN ask the Court to sentence him to no more than 24 months in prison together, which Counsel urges is an adequate sentence under the totality of the 3553 factors.

Dated: October 28, 2013                    Respectfully submitted,

                                           /s/ Paul E. Potter
                                           PAUL E. POTTER
                                           Attorney for Defendant
                                           **JOSE LUIS PAYAN**

10

SENTENCING MEMORANDUM OF DEFENDANT JOSE LUIS PAYAN

# PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA )
) ss
COUNTY OF LOS ANGELES )

I, ISELA MARQUEZ, am employed in the County of Los Angeles, State of California. I am over the age of eighteen and not a party to this action. My business address is 3852 East Colorado Boulevard, Pasadena, California 91107.

On October 28, 2013, I served the following document described as:

**DEFENDANT JOSE LUIS PAYAN'S POSITION WITH RESPECT TO SENTENCING**

on all interested parties by placing a true and correct copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Post Office mail at Los Angeles, California, addressed as follows:

Rasha Gerges, Esq.
Assistant United States Attorney
1200 U.S. Courthouse
312 North Spring Street
Los Angeles, CA 90012

Alexis Berg
United States Probation Officer
600 U.S. Courthouse
312 North Spring Street
Los Angeles, California 90012

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on October 28, 2013 at Pasadena, California.

/s/ Isela Marquez
ISELA MARQUEZ